(No. 5911)

ROBERT EVANS, BETTY EVANS and LINDA EVANS, A Minor, by ROBERT EVANS, Her Father and Next Friend, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 22, 1973.*

JERRY B. LUCAS, Attorney for Claimants.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

HOLDERMAN, J.

This case involves three claims for personal injuries arising out of a collision between an automobile driven by Robert Evans and an abandoned truck parked on the highway at the end of a dead end road. The collision occurred at night on January 29, 1970, on what used to be Route 45.

The liability of the State is predicated on the failure of the State to cause the abandoned truck to be removed and its failure to warn claimant of the dead end of the road.

Claimant, Robert Evans, his wife, Betty Evans, and his daughter, Linda Evans, were all injured in the collision. Betty Evans, his wife, was seated in the front seat on the passenger side. His daughter, Linda Evans, was in the back seat of the motor vehicle being operated by Robert Evans. The accident happened at or near Chebanse, Illinois, at approximately 10 o'clock in the evening.

Claimant had proceeded through Chebanse and had made a right turn on Oak Street after coming to a stop before entering. He then proceeded north on Oak Street which was a dead end street. The dead end was

approximately six blocks north of the intersection at which claimant entered Oak Street. He was not familiar with Oak Street nor the dead end.

Oak Street was an undivided two lane street, 16½ feet wide with a deteriorating concrete pavement. Running immediately parallel with it on the western side were the tracks of the Illinois Central.

Approximately three blocks before the dead end there was a speed limit sign reading 35 miles per hour. On the northeast corner of Oak Street and George Street, two blocks south of the scene of the accident, there was a square white sign with black letters reading DEAD END. At the dead end itself, there was installed a three section guardrail extending across both traffic lanes. In the back of the guardrail was a 30 inch standard stop sign mounted in the center of what would have been a road bed had the road bed continued. Parked directly in front of the guardrail was an abandoned truck facing south. There was no illumination at the dead end. The truck had been there since the summer of 1969, some six months prior to the time of the collision. It was parked in such a fashion that it completely hid the guardrail and the stop sign behind it from the view of oncoming traffic.

The weather on the evening of the occurrence was clear, the visibility good, and the pavement was dry. As claimant turned on to Oak Street, there was a train on the tracks coming toward him and also a car coming toward him. He later met another oncoming car. He testified that as he proceeded north on Oak Street his speed was approximately 30-35 miles per hour. He testified that he did not see the dead end sign and claimed that there was a sign which notified him to resume speed. However, the evidence is clear that there was no such resume speed sign. A trooper who investigated the accident immediately after

it occurred, stated that he revisited the scene that evening to determine whether or not there was a resume speed sign, but found none. The claimant, Robert Evans, did not see the truck until he was approximately 50 feet or more from it. He then applied his brakes in an effort to avoid striking the truck but was unable to do so. The trooper investigating the accident measured skid marks of 68 feet; and basing his opinion on the length of the skid marks and the damage to claimant's vehicle, stated that claimant must have been traveling between 40 and 50 miles per hour.

While the State may have given adequate warning of the dead end, nevertheless, this Court is of the opinion that the State was negligent in permitting the truck to stand abandoned in the middle of the road for at least six months. On occasions prior to the collision, an inspection was made of the area by a highway traffic department employee in charge of sign repairs. He failed to take notice of the truck standing on the road way.

The question arises as to whether or not Mr. Evans was guilty of contributory negligence which was a proximate cause of the accident. He apparently was driving at a speed greater than permitted and he failed entirely to see the posted sign that would have given him warning that the street came to an end. He claims that his failure to see the sign was due to a truck with lights on being parked in front of it. His alertness, however, is questionable when he testified to an imaginary resume speed sign.

The Court feels that Robert Evans' conduct contributed at least in part to the collision which occurred, and, therefore, he is barred from recovering. He was at the edge of a town and if he was blinded by the lights of the train and oncoming traffic, then he should have either reduced his speed or become more alert in his driving. While the obstructions might tend to explain his failure to

see the signs, nevertheless, it doesn't entirely exonerate him.

However, his negligence is not imputed to his passengers, his wife and daughter. They conducted themselves in the ordinary·manner of passengers and did nothing which could be held as being negligent on their own part.

Mrs. Evans had medical bills of approximately $3,400 plus $580 for nursing care, and $900 in lost earnings. A Dr. Lang testified that her condition was permanent and gave her a 35% disability of her left leg and a 25% disability to her right leg.

The disability of Mrs. Evans, according to the medical evidence, is severe on both her right and left leg, and it is our opinion that an award of $25,000 for damages sustained by her would be fair and just.

We believe that the award to Linda Evans should be in the amount of $400.00 as her injuries were of a comparatively minor nature.